IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 21, 2007

## STATE OF TENNESSEE v. MARQUERITE L. TIBBS

**Direct Appeal from the Circuit Court for Giles County**
**No. 10897     Jim T. Hamilton, Judge**

---

**No. M2006-01161-CCA-R3-CD - Filed June 27, 2007**

---

Defendant, Marquerite L. Tibbs, was charged with two counts of vehicular homicide, one count of possession of marijuana, and one count of driving on a revoked license. Each count of vehicular homicide involved the same victim, but alleged different theories of guilt. On February 16, 2005, Defendant pled guilty to one count of vehicular homicide and one count of possession of marijuana. In exchange for her plea, Defendant received eight years for the vehicular homicide conviction and eleven months, twenty nine days for the possession conviction, with the manner of service to be determined by the trial court. An order of *nolle prosequi* was entered as to the remaining counts of vehicular homicide and driving on a revoked license. Following a sentencing hearing, the trial court sentenced Defendant to serve eight years in the Department of Correction for the vehicular homicide conviction and eleven months, twenty-nine days for the possession conviction, to be served concurrently. On appeal, Defendant argues that the trial court erred in denying alternative sentencing. After a thorough review of the record, we reverse the judgment of the trial court and remand the case for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Reversed and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and J. C. MCLIN, J. joined.

Claudia S. Jack, District Public Defender; and Bob Stovall, Assistant Public Defender, Pulaski, Tennessee, for the appellant, Marguerite Lynn Tibbs.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Patrick Butler, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Sentencing Hearing**

The transcript of Defendant's guilty plea proceeding was not included in the record on appeal. As such, the facts as developed below are taken from the available record, including the transcript of the sentencing hearing and the accompanying exhibits.

On December 14, 2002, at 1:43 a.m., Trooper Mike McCallister, of the Tennessee Highway Patrol, responded to the scene of a single vehicle accident on Helms Road in Giles County. Trooper McCallister was informed there had been one fatality and the surviving occupant of the car was leaving the scene in an ambulance. He proceeded to the ambulance to speak with the other occupant about the accident. Defendant was in the ambulance and told Trooper McCallister she was driving the car when the accident occurred. Trooper McCallister could smell an odor of alcohol and asked Defendant if she had been drinking. She said she had consumed six beers that evening. The report from the toxicology test taken immediately following the accident revealed that Defendant's blood alcohol content was .18. The report also showed that Defendant had cocaine, amphetamine, and a prescription anti-depressant in her blood. Additionally, a bag of marijuana was recovered from Defendant's person while she was being treated at the hospital.

A video of the accident scene was introduced as an exhibit at the sentencing hearing. The video showed the automobile engulfed in flames when the first responders arrived at the scene. By the time Trooper McCallister arrived, the flames were almost entirely extinguished and the vehicle was sitting at an angle in a ditch. The victim, John Smith, was thrown from the vehicle during the accident and trapped under the wheels of the car. The victim's body was burned beyond recognition and had to be removed from beneath the car in pieces. Trooper McAllister determined that the accident occurred when the car "struck a culvert, pretty much head on, with the right side of the vehicle." There was no evidence that anything other than driver error had caused the accident.

Ms. Linda Lipham testified that she was an employee of the Board of Probation and Parole for the State of Tennessee. As part of her duties, she investigated, prepared, and submitted Defendant's presentence report to the trial court. Through her investigation, Ms. Lipham learned that Defendant was convicted of driving without insurance in 1995, driving under the influence of an intoxicant in February 1996, driving on a revoked license in September 1996, and later convicted of public intoxication in August 2002. Defendant also had a ten-year-old probation revocation warrant in Lawrence County, although the court clerk's office had no record of its disposition. Ms. Lipham testified that Defendant had a history of drug abuse, having used one-half ounce of marijuana per week until June of 2000, and one-half gram of cocaine per week until the time of the accident in 2002. Ms. Lipham said that Defendant was nice, cooperative and responsive during questioning, and had no trouble communicating. Ms. Lipham agreed that Defendant was a good candidate for probation.

Ms. Lipham also learned that Defendant was diagnosed with bipolar disorder, depression, and schizophrenia in 1987. Defendant was rendered disabled in 1997 as a result of her diseases. She began receiving counseling services for her health problems at Centerstone Mental Health Center in 2002. Defendant informed Ms. Lipham that she was taking approximately five medications to treat her illnesses. Ms. Lipham did not verify this information, nor did she verify Defendant's claim that she was receiving $852.00 in disability each month.

Ms. Linda Mogge, a clinical therapist at Centerstone Mental Health Center, testified regarding her treatment of Defendant since February 2003. Ms. Mogge said that Defendant was "very mood unstable . . . hallucinating and suicidal" at the time she began seeing her. Ms. Mogge determined Defendant was suicidal based on Defendant's statements that she heard voices that continually told her that she should "join John," that she should have died instead of the victim, or that she needed to die. Defendant repeatedly expressed remorse over the victim's death. Ms. Mogge said Defendant's emotional state was exacerbated by her "very poor" physical condition. Ms. Mogge said that had it not been for Defendant's pain, she and Defendant would have met on a more regular basis.

Ms. Mogge testified that Defendant was taking Aderall - a mood stabilizer, Haldol - an anti-psychotic antigen, Effexor SR - an anti-depressant, and Clozapine, - an anti-anxiety medication, to treat her mental infirmities. Ms. Mogge said she had no doubt that Defendant was remorseful, and that Defendant was suffering significant physical, mental, and emotional injuries as a result of the accident. Ms. Mogge said that Defendant suffered from depression, mood instability, and psychosis. She further stated that Defendant was both physically and mentally disabled, and that her mental disability stemmed from mental psychosis which existed for some time before the accident. She admitted that the mental illness was exacerbated by the accident.

Ms. Patricia Marshall, Defendant's mother, testified that she had been receiving Defendant's disability check since August 2002. According to Ms. Marshall, Defendant had a "nervous break down" in 1994, and was hospitalized several times before finally being placed on Social Security disability. Ms. Marshall said Defendant had been living with her for the last eighteen months and would continue to do so because she was unable to support herself. She also said Defendant suffered significant pain caused by a broken hip she sustained during the accident. At the time of the sentencing hearing, Defendant had undergone five surgeries on her hip, it had re-broken several times, and she was scheduled to have a sixth surgery after the sentencing hearing.

Ms. Marshall acknowledged that her daughter exhibited mental problems, remorse, and guilt resulting from the accident. Defendant often told Ms. Marshall that she wished she were the one who died or "she wishes she was dead." Ms. Marshall said Defendant was "mad" because the victim died rather than her, and she was suicidal as a result of her guilt. Ms. Marshall was aware that her daughter had a history of alcohol and drug abuse and that alcohol worsened her unstable mental condition.

In denying Defendant's request for probation or community corrections, the trial court stated as follows:

> I've heard quite a bit of proof in this case. It's going to be the judgment of the Court, I'm going to deny probation in this case, and reinstate the sentence of eight years (8 years) is what I believe what it was. And *I completely dismiss the physical condition and all other things that were raised*. I thought a lot about this case. And I understand the facts of what happened down there. It's not a case suited for probation to be granted. So I'm going to deny the probation and reinstate the sentence in this case.

(Emphasis added).

## II. Analysis

Defendant contends that the trial court did not properly consider the relevant sentencing principles in denying alternative sentencing, specifically community corrections. She argues that under the "special needs" provision of the statute, she is entitled to community corrections based on her "physical and mental limitations." Defendant further argues that this Court should conduct a de novo review of the matter because the trial court failed to make specific factual findings supporting her sentence.

When a defendant challenges the length, range or the manner of service of a sentence, it is the duty of this court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2003). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, and -210 (2003); *see State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

The trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). When a defendant is entitled to the statutory presumption favoring alternative sentencing, the state must overcome the presumption by the showing of "evidence to the contrary." *State v. Ashby*, 823 S.W.2d

at 169; *State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled in part on other grounds by *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000); *see* T.C.A. §§ 40-35-102(6), -103(1). However, even if the defendant is entitled to the statutory presumption favoring alternative sentencing, it is the defendant who has the burden of demonstrating his or her suitability for full probation. *Bingham*, 910 S.W.2d at 455; *see* T.C.A. § 40-35-303(b) (2003). Sentencing issues must be determined by the facts and circumstances of each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)).

Tennessee Code Annotated section 40-35-102(5) provides as follows: "In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." T.C.A. § 40-35-102(5) (2003). A defendant who does not fall within this class of offenders "and who is an especially mitigated offender or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary." T.C.A. § 40-35-102(6).

In the present case, Defendant is not presumed to be a favorable candidate for alternative sentencing options because she was convicted of a Class B felony. *See* T.C.A. § 40-35-102(6). Nonetheless, at the time Defendant committed the offense, a defendant was eligible to be considered for probation if the sentence actually imposed was eight years or less. T.C.A. § 40-35-303(a). Therefore, because Defendant received an eight-year sentence, she is eligible for consideration of alternative sentencing. *See* T.C.A. §§ 40-35-112(a)(2); 40-35-303(a). A defendant is eligible for participation in a community corrections program if the defendant satisfies the minimum eligibility criteria. *See* T.C.A. § 40-36-106(a)(1). One of these criteria is that the offender must be eligible for probation. T.C.A. § 40-36-106(c). However, a person who commits a violent offense is not generally eligible for sentencing pursuant to the Community Corrections Act. T.C.A. § 40-36-106(a)(3).

This Court has held that neither vehicular homicide nor vehicular assault qualify as a "non-violent felony offense." Therefore, a person convicted of vehicular homicide or vehicular assault is not generally eligible for sentencing under the Community Corrections Act. *See State v. Braden*, 867 S.W.2d 750, 765 (Tenn. Crim. App. 1993); *State v. Sherry Haynes*, No. 01C01-9512-CC-00412, 1996 WL 518270, at *2 (Tenn. Crim. App., at Nashville, Sept. 13, 1996); *State v. Robert Glen Grissom III*, No. 02C01-9204-CC00076, 1993 WL 64276, at *6 (Tenn. Crim. App., at Jackson, Mar. 10, 1993). Nevertheless, a defendant convicted of a violent offense may be eligible for a community corrections sentence if he or she is one "who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution." T.C.A. § 40-36-106(c).

The only portion of the trial court's ruling, as quoted above, which can conceivably be regarded as a finding of fact is the court's statement, "I completely dismiss the physical condition

and all other things that were raised." From this brief statement, we are unable to discern whether the trial court determined that Defendant's "physical condition" and "all other things . . . raised" did not exist as testified to, or whether the trial court accepted the testimony pertaining to these issues as credible, but concluded that Defendant's "physical condition" as proven weighed against granting an alternative sentence. The trial court did not state what effect, if any, Defendant's history of criminal convictions and criminal behavior had on the sentencing decision.

Based on the trial court's ruling, we cannot determine which testimony the trial court found credible or how much weight the trial court placed on credible proof. Normally, as noted by the State in its brief, a defendant's failure to include the guilty plea hearing transcript in the appellate record results in a presumption that the trial court's rulings were supported by the evidence. *State v. Robinson*, 73 S.W.3d 136, 154 (Tenn. Crim. App. 2001). However, this maxim presupposes that the trial court has set forth in the record the specific facts relied upon in reaching its ruling from which the presumption can be made. *State v. Ashby*, 823 S.W.2d at 169. Under the circumstances, we conclude that a new sentencing hearing is necessary. However, if there is another appeal in this case, the party appealing should include in the record the transcript of the guilty plea hearing.

The record of the sentencing hearing is part of the record of the case and "shall include specific findings of fact upon which application of the sentencing principles was based." T.C.A. § 40-35-209(c). The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. *State v. Ervin*, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). Here, the trial court made no such findings of fact, the record does not demonstrate how the trial court considered the applicable sentencing laws and principles, and the trial judge did not make specific findings with respect to its denial of probation and community corrections. On remand, specific findings of fact must be made on the record as to Defendant's suitability or lack thereof for probation and/or community corrections.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed and remanded for a new sentencing hearing in accordance with this opinion.

_____
THOMAS T. WOODALL, JUDGE